**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JUAN CASTRO, 11-B-2930,**

                             **Plaintiff,**
**v.**
                                                                  **12-CV-1242A(Sr)**
**PAUL SOBKOWIAK, et al.,**

                              **Defendants.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #19.

Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, alleging that on January 17, 2011, City of Buffalo Police Officers subjected plaintiff to excessive use of force and that Dr. Jeffrey Brewer released plaintiff from the hospital before it was medically appropriate to do so. Dkt. #5.

Currently before the Court is Dr. Jeffrey Brewer's motion to dismiss (Dkt. #37), which the Court converted to a motion for summary judgment (Dkt. #40), and a motion for summary judgment on behalf of City of Buffalo Police Lt. John Rieman; Officer Paul Sobkowiak; Officer Isaac Johnson; and Officer Judy Walker. Dkt. #43. For the following reasons, it is recommended that the motions be granted.

**BACKGROUND**

On January 17, 2011, plaintiff stabbed his girlfriend, Maria Pagan, with a knife, causing her death. Dkt. #5, ¶ 3; Dkt. #43-2, ¶ 1 & Dkt. #48, ¶ 4. Plaintiff also wounded his girlfriend's daughter, Zayra Pagan. Dkt. #5, ¶ 12; Dkt. #43-2, ¶ 1 & Dkt. #48, ¶ 4. Plaintiff then grabbed a sword and went outside the apartment building. Dkt. #5, ¶ 13.

City of Buffalo Police Officer Paul Sobkowiak arrived at the scene at 478 Normal Avenue and observed blood in the snow near the house. Dkt. #43-2, ¶ 3 & Dkt. #48, ¶ 4. Officer Sobkowiak pulled out his service firearm and walked up the front steps to the house, pushed open the front door, which was ajar, and observed Maria Pagan sitting on the floor, covered in blood. Dkt. #43-2, ¶ 3; Dkt. #43-4, ¶ 3 & Dkt. #48, ¶ 4. Officer Sobkowiak heard screams and discovered Zayra Pagan seriously injured at the top of the stairs. Dkt. #43-2, ¶ 4 & Dkt. #48, ¶ 4. Zayra Pagan advised Officer Sobkowiak that her assailant had gone outside. Dkt. #43-2, ¶ 4 & Dkt. #48, ¶ 4.

Officer Sobkowiak exited the home and observed Officer Johnson standing in the street in front of plaintiff with his service firearm drawn. Dkt. #43-2, ¶ 5 & Dkt. #48, ¶ 4. Plaintiff was covered in blood, holding a 3½ foot sword. Dkt. #43-2, ¶ 5 & Dkt. #48, ¶ 4. Officer Sobkowiak stood next to Officer Johnson and both officers repeatedly ordered plaintiff to drop the sword, but he did not comply. Dkt. #43-2, ¶ 5 & Dkt. #48, ¶ 4. In his complaint, plaintiff alleges that he did not understand the officers' command because he does not speak English. Dkt. #5, ¶ 4.

Although plaintiff does not recall what happened next (Dkt. #48, ¶ 5), Officer Sobkowiak declares that additional police officers, including Officer Walker, arrived on the scene and ordered plaintiff to drop the sword while neighbors shouted "abajo," which means "down" to plaintiff. Dkt. #43-4, ¶¶ 5-6. In response, plaintiff stated, in English, "I kill you motherfuckers." Dkt. #43-4, ¶ 6. Plaintiff reached into his pocket and pulled out a small knife, which he used to stab himself in the neck. Dkt. #43-4, ¶ 8. Plaintiff dropped the knife, placed both hands on the sword, raised the sword and began to approach the police officers. Dkt. #43-8, ¶ 8. As plaintiff swung the sword, Officer Sobkowiak fired one shot from his service revolver into plaintiff's abdomen. Dkt. #43-4, ¶ 9. Plaintiff fell to the ground. Dkt. #43-4, ¶ 9. Officer Sobkowiak requested an ambulance for plaintiff and a Lieutenant to respond to the scene. Dkt. #43-4, ¶ 9. Lt. John Rieman arrived at the scene before plaintiff was removed from the scene by ambulance. Dkt. #43-4, ¶ 9.

Plaintiff was transported to the Erie County Medical Center ("ECMC"), in critical condition. Dkt. #5, ¶ 26. Dr. Jeffrey Brewer affirms that he is a board certified surgeon and member of University at Buffalo Surgeons, Inc., which is contracted to provide surgical services at ECMC. Dkt. #37-2, ¶ 2. Pursuant to that contract, Dr. Brewer served as plaintiff's attending physician, performing multiple surgeries and monitoring his progress from critical condition until he was stable for discharge on January 31, 2011. Dkt. #37-2, ¶¶ 6-10. Dr. Brewer affirms that he made the decision to discharge plaintiff on that date because plaintiff no longer required care in a hospital setting. Dkt. #37-2, ¶ 12.

Plaintiff pled guilty to murder in the second degree, attempted murder in the second degree, and assault in the first degree. Dkt. #43-7. He was sentenced to a term of imprisonment of 20 years to life. Dkt. #43-7.

In his complaint, plaintiff alleges that Officer Sobkowiak should have checked to see if there was a Spanish speaking officer on scene who could communicate with plaintiff and that he should have attempted to gain control over plaintiff through use of a stun gun or pepper spray or should have aimed his service weapon at a non-vital body part. Dkt. #5, ¶ 19. Plaintiff alleges that the other officers should have intervened to prevent Officer Sobkowiak from shooting plaintiff. Dkt. #5, ¶ 22. Plaintiff claims that he was prematurely discharged from the hospital by Dr. Jeffrey Brewer. Dkt. #5, ¶ 29.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Under Color of State Law**

Dr. Brewer argues that he cannot be held liable pursuant to 42 U.S.C. § 1983 because he was not acting under color of state law when he treated plaintiff. Dkt. #37-4, p.3.

42 U.S.C. § 1983 "permits an individual deprived of a federal right by a person acting under color of state law to seek compensation in federal court." *Wimmer v. Suffolk Cty Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999). To prevail on a claim pursuant to § 1983, "plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Id.* at 137. "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999), *quoting Blum v. Yaretsky*, 458 U.S. 991, 1002 (1982).

In assessing whether a private party can held liable pursuant to 42 U.S.C. § 1983, courts consider whether: (1) the defendant was acting pursuant to the coercive power of the state (state compulsion test); (2) the defendant was a willful participant in joint activity with the state or the defendant's functions were entwined with state policies (the joint action or close nexus test); or (3) the state delegated functions to the defendant that were traditionally under the exclusive authority of the state (the public function test). *Doe v. Rosenberg,* 996 F. Supp. 343, 348-49 (S.D.N.Y. 1998), *aff'd* 166 F.3d 507 (2d Cir. 1999), *cert. denied*, 528 U.S. 1144 (2000). Private physicians are generally not state actors, especially where the physician is not performing a function traditionally reserved for the state and where the physician was not under contract with the State to provide medical services. *Koulkina v. City of New York*, 559 F. Supp.2d

300, 320 (S.D.N.Y. 2008); *Vazquez v. Marciano*, 169 F. Supp.2d 248, 253-54 (S.D.N.Y. 2001).

Dr. Brewer has affirmed that he was employed by a private corporation and that his decision to discharge plaintiff was made in accordance with his independent medical judgment as to plaintiff's physical condition. Plaintiff has failed to proffer any facts from which it could be inferred that an agent of the state was in any way involved in Dr. Brewer's decision making process. Accordingly, it is recommended that Dr. Brewer's motion for summary judgment be granted.

**Excessive Force**

Officer Sobkowiak argues that the use of force was objectively reasonable under the circumstances presented. Dkt. #43-8. Officers Johnson and Walker argue that they cannot be held liable for Officer Sobkowiak's ojectively reasonable use of force and, in any event, had no opportunity to intercede. Dkt. #43-8, pp.5-6. Lt. Rieman argues that he was not present at the time of the use of force. Dkt. #43-8, p.6.

Claims that law enforcement officers used excessive force in the course of an arrest or seizure of a citizen are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Proper application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Id.* The standard is objective and must be assessed from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. *Id.* at 396-97. Furthermore, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgment – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known." *Perason v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). "The objective reasonableness test is met – and the defendant is entitled to immunity – if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id., quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Id.* at 421. "[I]n the absence of a material factual dispute, the question of whether it was objectively

reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make." *Id.* at 422.

"The right to be free of excessive force is clearly established." *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996). "That there are constitutional limitations on the use of deadly force . . . is also clearly established." *Id.* As a result, Officer Sobkowiak's entitlement to qualified immunity depends on an assessment of the objective reasonableness of his belief that his conduct did not violate plaintiff's right to be free of excessive force. *Id.*

The undisputed facts demonstrate that Officer Sobkowiak was aware of a knife attack on two women, one of whom advised him that her assailant had left the building and that he observed plaintiff outside the home, covered in blood. Plaintiff refused repeated orders to drop a sword and instead raised the sword and moved toward law enforcement officers. At the very least, reasonably competent law enforcement officers would argue that it was objectively reasonable for Officer Sobkowiak to employ deadly force under these circumstances. *See Estate of Jackson v. City of Rochester*, 705 F. Supp. 779, 783 (W.D.N.Y. 1989) (granting qualified immunity on summary judgment where law enforcement officer employed deadly force in response to suspect lunging at officer with a knife). In the absence of a viable claim of excessive force against Officer Sobkowiak, there is no basis for a claim that Officers Johnson and Walker failed to intervene to prevent the use of excessive force. As Lt. Rieman did not arrive on the scene until after plaintiff was shot, plaintiff cannot demonstrate his personal involvement in the alleged constitutional violation. As a

result, it is recommended that defendants' motion for summary judgment be granted with respect to plaintiff's allegations of excessive force.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motions (Dkt. #37 & 43), be granted and plaintiff's complaint be dismissed.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

**DATED:**	**Buffalo, New York**
	**August 10, 2015**

	  *s/ H. Kenneth Schroeder, Jr.*
	**H. KENNETH SCHROEDER, JR.**
	**United States Magistrate Judge**